UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Benjamin Joseph Hill,<br><br>  Plaintiff,<br> v.<br><br>Thomas Keith Rudenick, in his individual and official capacities as a Ramsey County Sheriff's Deputy, Defendant Ramsey County Sheriff's Office Deputies John Does 1-5, Defendant Ramsey County Sheriff's Office Supervisors John Does 6-10, the Ramsey County Sheriff's Office, and the County of Ramsey.<br><br>  Defendants. | Case No. 121-cv-_____ (___/___)<br><br>**COMPLAINT**<br>**JURY TRIAL DEMANDED**<br>**UNDER FED. R. CIV. P. 38(b)** |

For his Complaint, Benjamin Joseph Hill ("Hill") states and alleges as follows:

1. This is an action for money damages arising out of the violation of Hill's Fourth, Fifth, and Fourteenth Amendment rights by Defendant Thomas Rudenick ("Rudenick"), who in pursuit of personal and professional gain, falsified and fabricated evidence in an effort to obtain convictions against Plaintiff. But for the DNA evidence that Defendant Rudenick planted, there would have been no evidence to convict Plaintiff and send him to prison.

2. Hill brings this action to vindicate his well-settled civil rights pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and 28 U.S.C. §§ 1331 and 1343(3). These statutory and constitutional

provisions confer original jurisdiction of this Court over this matter. Plaintiff also brings pendant claims against Defendants under Minnesota common law.

3. Venue is proper under 28 U.S.C. §§ 1391(b)(1), (2) and (e)(1)(A), (B).

4. Hill is 42-years-old and is a citizen of the United States, residing in the State of Minnesota.

5. Upon information and belief, Rudenick is, and was at all times material hereto, a United States citizen residing in the State of Minnesota. At all times material hereto, Rudenick was a deputy of the Ramsey County Sheriff's Office, acting under color of state law, and he is sued in his individual capacity for the constitutional deprivations that caused Hill severe and irreparable harm.

6. John Does 1-5 are unknown deputies employed by the Ramsey County Sheriff's Office and sued in their individual capacities, who, upon information and belief, conspired with Defendant Rudenick, or at a minimum failed to intervene in his plot to frame an innocent man. John Does 6-10 are supervisors with the Ramsey County Sheriff's Department who failed in their supervisory capacities to train, supervise, discipline, and intervene in Defendant Rudenick's unconstitutional conduct.

7. This case revolves around the framing of an innocent citizen: Rudenick planted Plaintiff's DNA on two firearms in order to secure convictions for Possession of a Firearm by an Ineligible Person. Plaintiff was later fully exonerated by the State of Minnesota.

8. In 2011, Plaintiff resided in St. Paul, Minnesota. During an investigation for an alleged robbery (for which Hill was never charged) law enforcement found two firearms,

one at Hill's parents' house (where Hill did not live) and the other, hidden by an employee at Hill's Eastside Pizzeria.

9. On January 17, 2013 Hill was wrongfully convicted in Ramsey County District Court on two counts of Possession of Firearm by an Ineligible Person.

10. Hill was, however, actually innocent of all such charges and offenses. At trial, two witnesses testified that Hill was innocent. Hill's sister testified that the firearm found at Hill parent's house belonged to her, that Hill did not reside there, and that the gun was not found among any belongings her brother may have kept there. Another handgun was found hidden in an air vent at Hill's business. At trial, an employee testified the firearm was his and he had hidden it there without Plaintiff's knowledge. Hill also testified that he never possessed or handled the guns. The only evidence used to convict Plaintiff was the DNA planted on the two guns and Defendant Rudenick's perjured testimony regarding the manner in which he processed Plaintiff's DNA sample and the seized guns.

11. On April 3, 2013 Hill was sentenced to serve 60 months in prison.

12. After being framed by Rudenick, Plaintiff was wrongfully incarcerated for a total of 1206 days (approximately 3 years, 3 months, and 19 days). Plaintiff was under Intensive Supervised Release for 227 days (0.621 years) and Supervised Release for 379 days (1.038 years).

13. On October 3, 2018, Hill's Petition for Post-Conviction Relief in Ramsey County District Court was granted, and all of Plaintiff's convictions were vacated and set aside and Hill was granted a new trial based on new evidence that was consistent with Plaintiff's claim of innocence. The Court found "proof by preponderance of the evidence that the

DNA was planted in this case." The Court also found "a high probability that the new evidence would result in an acquittal . . . ." These findings establish Plaintiff's innocence by a fair preponderance of the evidence.

14.     Defendant Rudenick is now a convicted felon for tampering with and stealing evidence (Court File no. 62-CR-15-5241). In that case he was investigated by Washington County and they concluded Rudenick had been confiscating evidence, but not returning it or logging it into property. Rudenick was "retired effective 02/01/2015" and then pawned evidence in February and April 2015 that he had kept from work. The criminal complaint against Rudenick and the independent investigation in Washington County show Rudenick tampered with evidence on numerous other occasions. The independent investigation reports show Rudenick was dishonest with his department and his coworkers. Rudenick also failed to complete necessary work on numerous cases he was supposed to be investigating. These reports and the independent investigation paint a portrait of a desperate investigator, behind in his work, willing to lie, cheat, and steal: willing to cut corners and plant evidence in order to frame Hill, a person he thought should be off the street.

15.     In order to frame Hill, Defendant Rudenick circumvented the chain of custody and record keeping protocols in place at the Ramsey County Sheriff's Office. Furthermore, Defendant Rudenick's supervisors, John Does 1-5, failed to train Rudenick and to supervise his work. If John Does 1-5 had adequately supervised Rudenick, he would have been prevented from framing the Plaintiff.

16.     For example, Rudenick had the motive, means, and opportunity to collect DNA evidence from Hill, then plant that DNA material on the firearms he held in evidence. The

4

purpose of the chain of custody procedures, logging requirements, and antitampering protocols are in place to prevent officers from having the means and opportunity to plant or alter evidence.

17. Another example, Rudenick failed to complete a property transfer form for the DNA buccal swab sample. Property records prepared by Rudenick were never filled out properly and do not indicate when evidence was put into the property room. Investigation reports and property records in other cases prepared by Rudenick were being falsified around the same time of Hill's investigation.

18. After his release from prison, Plaintiff hired private investigator and former Ramsey County Sheriff Sergeant Warren Robinson to investigate his wrongful conviction. From Robinson's independent investigation, Rudenick had held onto the firearms for four days before turning them into the property room. He had both the guns and the buccal swab with the defendant's DNA on it, together. The only way Plaintiff's DNA was found on those firearms is because Rudenick put it there. At Plaintiff's postconviction hearing, Rudenick testified that the BCA DNA buccal swab antitampering protocols are not infallible and can be circumvented. Rudenick even offered more information on how he could circumvent the sample kit safeguards by "rewetting" the swabs. Robinson, who had at one time been Rudenick's training officer, testified that Rudenick had gone "rogue."

19. At Plaintiff's postconviction hearing, Rudenick testified he purposely kept and manipulated evidence as he pleased and did not bother to create accurate or complete property room records:

> Q. So you said you had a key to this property patrol locker. Right?

5

      A. The evidence room, yes. Every investigator had one.
      Q. So you could take things out, put things in there?
      A. Correct.
      Q. And you could do that without making any records of taking it out, putting it in?
      A. Yeah.
      Q. So you don't have to deal with the transfer sheets and all that paperwork?
      A. Correct.

20. On December 10, 2018 the Ramsey County Attorney's Office, acting on behalf of the State of Minnesota, dismissed all charges against the Plaintiff.

21. On December 22, 2020, pursuant to Minn. Stat. § 590.11, subd. 3(b), the Ramsey County District Court entered an Order finding that Plaintiff "meets the statutory definition of 'exonerated'" and "meets the elements laid out in Minn. Stat. 590.11, subd. 5 (a) (1) - (4)." The Order concluded that "Plaintiff established that a crime was *not* committed."

## COUNT I - 42 U.S.C. § 1983

### 14th - Violation of Due Process
*Plaintiff v. All Named and Unnamed Defendants*

22. Plaintiff realleges each of the preceding allegations as if set forth fully herein.

23. As described more fully above, all of the Defendant Rudenick and the other Defendants, while acting individually, in concert, or as part of a conspiracy, and under color of law, and within the scope of their employment, deprived Plaintiff of his constitutional right to due process.

24. Specifically, Defendant Rudenick and the other Defendants, set in motion a chain of events that caused and/or perpetuated Plaintiff's wrongful charging, prosecution, conviction, and imprisonment by committing and/or causing to be committed one or more of the following acts: they planted Plaintiff's DNA on guns seized by Defendant Rudenick

6

and other Defendants, they created false internal Ramsey County Sheriff's Office reports and chain-of-custody records, and they drafted and submitted statements and narrative reports that were utterly fabricated by Defendants. These brazen, illegal acts formed the basis for "probable cause" to charge, illegally prosecute, wrongfully convict, and ultimately imprison Plaintiff.

25. Absent the Defendants' misconduct, the charging and prosecution of Plaintiff would have been impossible, and he would never have been convicted, imprisoned, and otherwise been deprived of his liberty.

26. The Defendants' misconduct was the direct and proximate cause of Plaintiff's illegal pre-trial detention, criminal conviction, and wrongful imprisonment. Plaintiff was therefore deprived of his constitutional right to a fair hearing, and a fair trial, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

27. The misconduct described in this Count shocks the conscience, was objectively unreasonable, and done, at minimum recklessly, and more likely intentionally, with malice to deprive Plaintiff of his clearly-established rights under the United States Constitution.

28. As a direct result of Defendants' misconduct, Plaintiff suffered irreparable injury as set forth above, including but not limited to loss of liberty, financial harm, and severe emotional distress.

## COUNT II - 42 U.S.C. § 1983

**4th and 14th Amendment - Deprivation of Liberty Without Probable Cause**
*Plaintiff v. All Named and Unnamed Defendants*

29. Plaintiff realleges each of the preceding allegations as if set forth fully herein.

30. Defendant Rudenick and the other Defendants falsely created the pretense of probable cause, caused Plaintiff to be illegally seized and detained before and through trial, convicted, and imprisoned without probable cause to believe that a crime was committed, and that he had committed it. As a result, Defendants deprived Plaintiff of his rights under the Fourth Amendment to the United States Constitution.

31. The misconduct described in the above paragraph was the direct product of the Ramsey County Sheriff's Office policies, practices, and systemic failure to properly train, supervise, and discipline its deputies, including Defendant Rudenick.

32. As a result of this misconduct, Plaintiff was deprived of his liberty and sustained, and continues to sustain severe emotional and psychological injuries, and financial harm.

## COUNT III - 42 § 1983

### 4th, 5th, and 14th Amendments - Failure to Intervene
*Plaintiff v. All Named and Unnamed Defendants*

33. Each paragraph of this Complaint is incorporated as if restated herein.

34. John Does Defendants 1-5 were aware of the blatant constitutional violations perpetrated by Defendant Rudenick as set out above, and had the duty and reasonable opportunity to prevent the deprivation of the Plaintiff's constitutional rights, failed to do so.

35. The misconduct described in this Count was objectively unreasonable and undertaken intentionally, with malice, and/or willful indifference to Plaintiff's clearly established unconstitutional rights.

## COUNT IV - 42 § 1983

### 14th Amendment Due Process and *Brady* Violation
*Plaintiff v. Defendant Rudenick and All Other Defendants*

36.     Each paragraph of this Complaint is incorporated as if restated herein.

37.     Defendant Rudenick and the other Defendants violated Plaintiff's pre-trial rights and to a fair trial under the Fourteenth Amendment and *Brady v. Maryland* by intentionally withholding exculpatory evidence that would have certainly led to the pre-trail dismissal of the complaint against Plaintiff or his acquittal at trial.

38.     Defendant Rudenick and the other Defendants did not disclose the exculpatory evidence until *after* Plaintiff had served his entire prison term, and refused to do so until after they had been ordered to by the post-conviction court.

39.     Defendant Rudenick and the other Defendants deliberately, maliciously, and intentionally concealed exculpatory evidence that would indubitably have led to Plaintiff's acquittal at trial.

40.     As a direct result of Defendant Rudenick and the other Defendants' craven misconduct, Plaintiff suffered extreme psychological and emotional damages.

## COUNT V - 42 § 1983

### *Monell* Policies and Practices
*Plaintiff v. Ramsey County Sheriff's Office*

41.     Each paragraph of this Complaint is incorporated as if restated herein.

42.     The actions of all the individual Defendants were undertaken pursuant to policies, practices, and customs of the Ramsey County Sheriff's Office and the County of Ramsey,

9

which were approved, encouraged, and/or ratified by policymakers for the Ramsey County Sheriff's Department and the County of Ramsey with final policymaking authority.

43. The policies and practices included the failure to adequately train, supervise, monitor, and discipline its deputies who engaged in the constitutional violations, as set forth above, pursuing wrongful convictions through reliance on corrupt investigations, fabricated evidence, and the framing of innocent suspects.

44. One or more of these policies, practices, and customs described in this Count were implemented and maintained by Defendant Ramsey County Sheriff's Office and the County of Ramsey with deliberate indifference to Plaintiff's constitutional rights, and was a driving force behind the constitutional violations.

45. As a direct and proximate result of Defendant Ramsey County Sheriff's Office and the County of Ramsey's actions, Plaintiff's constitutional rights were violated, and he suffered emotional, psychological, and economic damages set forth in this Complaint.

### COUNT VI - State Common Law Claim

**Malicious Prosecution**
*Plaintiff v. All Named and Unnamed Defendants*

46. Each paragraph of this Complaint is incorporated as if restated herein.

47. The Defendants accused Plaintiff of criminal activity knowing that he was factually innocent, and by extension, that there was no probable cause to arrest Plaintiff or charge him with any crime.

48. The Defendants intentionally made false statements to prosecutors with the intent to persuade prosecutors to initiate a felony criminal prosecution against Plaintiff.

49. The Defendants caused Plaintiff to be improperly subject to judicial proceedings for which there was no actual probable cause. These judicial proceedings were instituted and continued maliciously, resulting in Plaintiff's wrongful prosecution, conviction, and imprisonment.

50. Statements by Defendants regarding Plaintiff's culpability were made knowing that they were false because the inculpatory evidence against Plaintiff had been planted by Defendant Rudenick. The Defendants were also aware that there was no true and/or reliable evidence connecting Plaintiff to a crime.

51. Defendants intentionally withheld evidence from prosecutors, and misrepresented to them the true facts which would have negated any probable cause against Plaintiff. In addition, Defendants also hid the fact that they had planted DNA on the subject guns from Plaintiff and his lawyers.

52. The misconduct described in this Count was undertaken intentionally, with malice, willfulness, and reckless indifference to Plaintiff's constitutional rights.

53. On December 10, 2018, the prosecution was terminated in Plaintiff's favor when his conviction was vacated and the charges dismissed.

54. As a direct and proximate result of Defendants' misconduct, Plaintiff sustained, and continues to sustain the injuries set forth above, including extreme and continuing emotional and psychological, as well as economic damages.

## COUNT VII - State Common Law Claim

### Intentional Infliction of Emotional Distress
*Plaintiff v. All Named and Unnamed Defendants*

55. Each paragraph of this Complaint is incorporated as if restated herein.

56. The misconduct of Defendants as set forth above was extreme and outrageous.

57. Defendants actions were rooted in an abuse of power and/or authority, and they were undertaken with intent to cause, or were in reckless disregard of the obvious potential that their conduct would cause the severe emotional distress to Plaintiff outlined above.

58. Defendants continued to engage in their outrageous and conscience-shocking misconduct during even after Plaintiff's wrongful imprisonment and eventual exoneration.

59. Plaintiff was legally unable to bring this lawsuit until his conviction was vacated on December 10, 2018.

60. As a direct and proximate result of Defendants' misconduct, Plaintiff suffered physical injury, and lasting emotional and psychological harm.

## COUNT VIII - State Common Law Claim

### Civil Conspiracy
*Plaintiff v. All Named and Unnamed Defendants*

61. Each paragraph of this Complaint is incorporated as if restated herein.

62. As described more fully in the proceeding paragraphs, Defendants, acting in concert with one another and with other known and unknown co-conspirators, conspired to engage in a concerted action to accomplish an unlawful purpose, specifically to deprive Plaintiff of his constitutional rights, as set forth above.

63. In furtherance of this conspiracy, Defendants committed overt acts and were otherwise willful participants in joint activity including but not limited to the malicious prosecution of Plaintiff, his illegal imprisonment, and their intentional infliction of emotional distress.

64. The misconduct described in this Count was perpetrated intentionally, with malice, willfulness, and reckless indifference.

65. As a direct and proximate cause of Defendants' conspiracy, Plaintiff suffered damages as set forth above, including physical injury and severe and lasting emotional and psychological harm.

## COUNT IX - State Common Law Claim

### *Respondeat Superior*
*Plaintiff v. County of Ramsey and the Ramsey County Sheriff's Office*

66. Each paragraph of this Complaint is incorporated as if restated fully herein.

67. In committing the acts alleged in the above paragraphs, each of the individual Defendant was an employee of the County of Ramsey and the Ramsey County Sheriff's Office, acting at all times within the scope of their employment and under color of law.

68. Defendant County of Ramsey, and the Ramsey County Sheriff's Office by implication, is liable as a principal for all state law torts committed by Defendants as alleged above, including but not limited to malicious prosecution, intentional infliction of emotional distress, and conspiracy.

**PLAINTIFF DEMANDS A JURY TRIAL TO ALL ISSUES OF FACT HEREIN.**

WHEREFORE, Plaintiff Benjamin Joseph Hill prays for judgment against Defendants as follows:

1. As to Counts I-IX, a money judgment against Defendants in the amount of $5,000,000.00 for each of the nine Counts, together with costs, including, where applicable, reasonable attorneys' fees under 42 U.S.C. § 1988, and prejudgment interest;

2. Defendants subjected Hill to these deprivations in such a manner as to render them liable for punitive damages, which are hereby alleged in Counts I-IV as a matter of federal common law pursuant to *Smith v. Wade*, 461 U.S. 30 (1983), in an amount exceeding $10,000,000.00; and,

3. For such other and further relief as this Court deems just and equitable.

Dated: February 10, 2022         **THOMAS HAGLER ATTORNEY AT LAW**

*/s/ Thomas Hagler*_____
Thomas Hagler, #0398705
332 Minnesota Street, Suite W1610
St. Paul, Minnesota 55101
Telephone:  612-208-3777
*tomhaglerlaw@gmail.com*


**APPLEBAUM LAW FIRM**

/s/ Paul Applebaum
Paul Applebaum, #223098
First National Bank Building
332 Minnesota Street, Suite W1610
Saint Paul, Minnesota 55101
Phone: 651-222-2999
Fax: 651-223-5179
*paul@applebaumlawfirm.com*