# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

BENJAMIN JOSEPH HILL,

                            Plaintiff,

v.

THOMAS KEITH RUDENICK, in his individual and official capacities as a Ramsey County Sheriff's Deputy, THE RAMSEY COUNTY SHERIFF'S OFFICE, and THE COUNTY OF RAMSEY,

                            Defendants.

Case No. 22-CV-393 (NEB/DTS)

ORDER ON MOTIONS FOR SUMMARY JUDGMENT

---

Plaintiff Benjamin Hill was convicted of two counts of possession of a firearm by an ineligible person. A Minnesota court later exonerated him, finding that Thomas Rudenick, a sheriff's deputy and lead investigator in Hill's case, likely planted evidence against Hill. Hill now sues Ramsey County and Rudenick. The parties have filed cross-motions for summary judgment. For the reasons below, Ramsey County's motion (ECF No. 57) is granted, and Rudenick's and Hill's motions (ECF Nos. 63, 68) are denied.

## BACKGROUND

### I.    State Court Trial and Rudenick's Subsequent Conviction

At a trial in 2013, a Minnesota state jury found Hill guilty of two counts of possession of a firearm by an ineligible person. (ECF No. 70-5 ("Postconviction Order") at 2[1].) Part of the evidence offered by the state and admitted by the court was that Hill's DNA was on the firearms. (*Id.* at 3.) After the guilty verdict, Hill was sentenced to 60 months in prison. (*Id.* at 2.)

Later, then-Deputy Thomas Rudenick—the lead investigator in Hill's case—was investigated for wrongdoing in other cases. (*Id.* at 3; *see* ECF No. 70-11 ("Investigation File").) The investigation found that Rudenick had a pattern of stealing and selling evidence rather than returning it to the property room or its rightful owner. (Investigation File at 5, 134–35.) In 2015, Rudenick pled guilty to a felony for this conduct. (ECF No. 70-12 at 6–7.)

### II.    Postconviction Appeal

Hill then petitioned for postconviction relief based on the Rudenick investigation and conviction. (Postconviction Order at 2). Hill argued that Rudenick planted the DNA on the guns, and without that evidence, he would not have been convicted. (*Id.* at 3–4.) Hill also alleged the state failed to disclose certain evidence. (*Id.* at 2.)

---

[1] Unless otherwise noted, citations to the page numbers of exhibits, including hearing and deposition transcripts, reference ECF pagination.

The post-conviction court held an evidentiary hearing, and Rudenick testified. He admitted to mishandling evidence in some cases but asserted that he did not do so until later in his career. (ECF No. 70-4 at 18:1–19:19.) He stated he did not plant evidence in this case. (ECF No. 70-3 at 84:4–7.) Hill presented evidence that Rudenick started stealing property around the time of Hill's trial. (*See* Investigation File at 26.) Hill argued that Rudenick was under pressure to close cases quickly and was willing to plant evidence to do so. (*See* ECF No. 70-4 at 18:7–19:21; Postconviction Order at 3–4.)

Specifically, Hill argued that Rudenick used buccal swabs to plant DNA onto firearms, including the firearms at issue in Hill's case. Rudenick collected Hill's DNA using buccal swabs. (ECF No. 66-13 ("Postconviction Tr.") at 86:3–18.)[2] Rudenick testified to taking the swabs to the police station to be cataloged and inventoried. (Postconviction Tr. at 87:4–7.) Records did not reflect that the swabs were immediately cataloged and inventoried, and Rudenick changed his testimony and said he might have brought the swabs directly to the lab. (*Id.* at 87:13–88:9.) Rudenick conceded that there was no documentation logging the buccal swabs into inventory. (*Id.* at 99:23–101:6.) The report of Deputy Julie Larson, which was not disclosed to the trial attorneys, showed that she was waiting for swabs to be admitted into evidence, suggesting a delay. (Larson Dep.

---

[2] Rudenick had access to additional buccal swab kits at the police station, although he testified to bringing only one buccal swab per suspect. (Postconviction Tr. at 112:4–9; ECF No. 70-1 ("Larson Dep.") at 83:22–84:9.)

at 71:5–73:16.) There was no record of the location of the DNA from June 11, 2010, to July 15, 2010. (ECF No. 70-14 ("Fossum Ex.") at 2.)

Rudenick also collected the guns. He testified to leaving them in an evidence staging room, but he later stated he put the firearms in a property room locker. (Postconviction Tr. at 90:15–21, 113:11–14.) Rudenick could not explain several discrepancies in his reports. (*Id.* at 139:9–141:25.) He also admitted he had access to both the guns and swabs at the same time. (*Id.* at 114:18–115:9.)

Based on the evidentiary hearing, Ramsey County District Court Judge Judith M. Tilsen found that "opportunity and means coupled with Deputy Rudenick's dishonest behavior as an officer provide proof by a preponderance of the evidence that the DNA was planted in this case." (Postconviction Order at 4.)

Hill argued additional sloppy police and prosecutorial work in the case, including: that the state failed to disclose complete property and inventory records and documents about the timing of testing and collection of evidence; that the chain-of-custody for evidence was not properly preserved; and that reports were written almost two years after searches and not disclosed properly. (*Id.* at 5–6; Fossum Ex. at 2.) On that last point, the Plaintiff's expert, former Rice County Attorney John Fossum, states that "[a] reasonable conclusion is that, when defense counsel raised the issue, Defendant Rudenick enlisted his colleagues to create reports to provide the missing chain of custody for the evidence seized." (Fossum Ex. at 2.)

4

Hill's petition was ultimately granted, and Judge Tilsen ordered a new trial. (Postconviction Order at 6–7.) The court found that the "totality of the circumstances brings into question the integrity of the trial." (*Id.* at 7.) The new evidence calls into question the admissibility of the DNA evidence, and without the evidence, "this case would have had a different result." (*Id.* at 6.) Rather than pursue a new trial, the state dismissed the complaint. (ECF No. 70-9 at 2.)

Hill later filed a Petition for Postconviction Relief for an Order Establishing Eligibility for Exoneration Compensation. (*See* ECF No. 70-6 at 2.) The court granted the request, finding that "[a]pplying the burden of proof, to establish the facts by a fair preponderance of the evidence, this Court finds that Petitioner established that a crime was not committed." (*Id.* at 3 (quotation marks and citation omitted).) Further, "absent the reliability of the DNA evidence, [the Minnesota district] Court [found] to a fair preponderance, Petitioner was not in physical or constructive of possession of a firearm." (*Id.*)

### III.    This Dispute

Hill has now sued Rudenick, John Doe police officers, Ramsey County Sheriff's Office, and Ramsey County. (ECF No. 1.) Hill brought various constitutional and state-law claims against all Defendants. (*Id.* ¶¶ 22–40, 46–68.) At oral argument, Hill voluntarily dismissed all claims against the John Doe defendants and Counts III and VI–IX. He also dismissed Ramsey County from Counts I, II, and IV.

The remaining claims include Fourth and Fourteenth Amendment claims against Rudenick, and *Monell*[3] liability against Ramsey County Sheriff's Office. Hill, Rudenick, and Ramsey County move for summary judgment on all claims. (ECF Nos. 57, 63, 68.)

## ANALYSIS

### I.     Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if a factfinder could reasonably determine the issue in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the nonmoving party. *Engelhardt v. Qwest Corp.*, 918 F.3d 974, 979 (8th Cir. 2019). "Nevertheless, a plaintiff seeking to defeat summary judgment must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with *specific facts* showing that there is a genuine issue for trial." *Id.* (quotation marks and citation omitted).

---

[3] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

## II.    Rudenick's and Hill's Motions for Summary Judgment on Fourth and Fourteenth Amendment Claims

Rudenick[4] and Hill cross-move for summary judgment on the claims for failure to intervene, deprivation of liberty without probable cause, and *Brady* violation. Hill first argues that because of the state court judgment, Rudenick is precluded from arguing, among other issues, that he did not plant DNA or mishandle evidence. So a threshold issue in deciding these claims is whether issue preclusion applies to Rudenick.

### A.    *Issue Preclusion*

Issue preclusion prevents litigants from relitigating in subsequent actions identical issues determined in a prior action. *Heine v. Simon*, 702 N.W.2d 752, 761 (Minn. 2005).[5] Courts should not rigidly apply issue preclusion; instead, courts should focus on "whether its application results in an injustice against the party to be precluded." *Sondel*

---

[4] Hill sues Rudenick in his individual and official capacities. "Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55 (1978). Accordingly, the Court construes claims against Rudenick in his official capacity as claims against the County, which are analyzed in Section III.

[5] The Court must apply Minnesota law on issue preclusion because Hill is asking the Court to decide that the Minnesota state court judgment precludes adjudicating this issue. 28 U.S.C. § 1738 ("[J]udicial proceedings [of any court of any state] . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . ."); *Baker v. McCoy*, 739 F.2d 381, 384 (8th Cir. 1984).

*v. Nw. Airlines, Inc.*, 56 F.3d 934, 938 (8th Cir. 1995) (citing *Houlihan v. Fimon*, 454 N.W.2d

633, 635 (Minn. App. 1990)). Issue preclusion has four elements:

> (1) the issue was identical to one in a prior adjudication;
> (2) there was a final judgment on the merits;
> (3) the estopped party was a party or in privity with a party to the prior adjudication; and
> (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

*Ill. Farmers Ins. v. Reed*, 662 N.W.2d 529, 531 (Minn. 2003) (modified into list format,

citation omitted). Because the last two elements are not met, issue preclusion does not

apply.

    1.    *Privity*

Rudenick was not a party to Hill's criminal case, so Rudenick must be in privity

with the state for issue preclusion to apply. Under Minnesota law, privity can be found if

the party to be estopped "(1) had a controlling participation in the first action, (2) had an

active self-interest in the previous litigation, or (3) had a right to appeal from a prior

judgment." *State v. Lemmer*, 736 N.W.2d 650, 661 (Minn. 2007) (internal citation omitted).

Rudenick had none of these. While he testified in the first action, he certainly did not

control any aspects of the litigation strategy. And Rudenick's interest was distinct from

the state's—the state was not concerned about Rudenick's personal liability. Nor did

Rudenick have a right to appeal from the judgment.

The Eighth Circuit considered a similar matter in *Duncan v. Clements.* 744 F.2d 48 (8th Cir. 1984).[6] There, the plaintiff prevailed in a criminal proceeding on a motion to suppress evidence based on an illegal search and seizure. *Id.* at 51. In a later civil suit against the police officer, the Eighth Circuit declined to estop the officer because of a lack of privity between the officer and the state. *Id.* at 52. The *Duncan* court reasoned that an individual officer has no interest in the outcome of a criminal proceeding, which is designed to vindicate the public interest. *Id.*

So too here.[7] The fact that both Rudenick and the state were interested in proving Hill's guilt is not enough to establish privity. Only the state, not Rudenick, had an interest

---

[6] Although *Duncan* interpreted Missouri law, Minnesota's and Missouri's laws on collateral estoppel are "substantially similar." *Schumacher v. Halverson*, 467 F. Supp. 2d 939, 947 (D. Minn. 2006).

[7] The Court is in good company in finding no privity under Minnesota law. *Schumacher*, 467 F. Supp. 2d at 946–47; *Radunz v. Meyer*, No. 08-CV-268 (JNE/RLE), 2009 WL 504691, at *6–7 (D. Minn. Feb. 26, 2009). Although applying other states' laws, other circuits agree. *Bilida v. McCleod*, 211 F.3d 166, 170–71 (1st Cir. 2000); (holding that collateral estoppel did not bar Rhode Island officers sued under § 1983 from asserting legality of searches found unconstitutional in earlier criminal proceedings: "[T]he interests and incentives of the individual police [officers] . . . are not identical to those of the state, and the officers normally have little control over the conduct of a criminal proceeding."); *Jenkins v. City of New York*, 478 F.3d 76, 85–86 (2d Cir. 2007) (same result regarding New York officers); *McCoy v. Hernandez*, 203 F.3d 371, 374–75 (5th Cir. 2000) (same result regarding Texas officers); *Turpin v. Cnty. of Rock*, 262 F.3d 779 782–83 (8th Cir. 2001) (same result regarding Nebraska officers); *Kinslow v. Ratzlaff*, 158 F.3d 1104, 1105–06 (10th Cir. 1998) (same result regarding Oklahoma officers); *Kraushaar v. Flanigan*, 45 F.3d 1040, 1050 (7th Cir. 1995) (same result regarding an Illinois officer); *Davis v. Eide*, 439 F.2d 1077, 1078 (9th Cir. 1971) (same result regarding California officers); *Farred v. Hicks*, 915 F.2d 1530, 1534 (11th Cir. 1990) (same result regarding Georgia officers).

in the criminal proceeding against Hill; Rudenick's personal interests were not at stake, so there is no privity. *Lemmer*, 736 N.W.2d at 661 ("[W]hen determining whether privity exists, the proper focus is on whether the legal rights of the party to be estopped were adequately represented by the party to the first litigation.").[8]

2.     *Opportunity to be Heard*

Rudenick also did not have a full and fair opportunity to be heard—he was merely a witness at the proceeding. The prosecutor in the previous proceeding represented the state of Minnesota, not Rudenick. Rudenick did not make decisions about the prosecution or the decision to dismiss the charges. *See Radunz*, 2009 WL 504691, at *7; *see also Duncan*, 744 F.2d at 52–53. Although Rudenick testified, he had no "measure of control over the [prosecutor's] case, the witness selection, or any opportunity to present argument on [his] own behalf." *Schumacher*, 467 F. Supp. 2d at 948. Rudenick therefore did not have an

---

[8] Contrary to Hill's assertion, *Vizenor v. Hoffman* does not require the opposite conclusion. No. A07-0646, 2008 WL 933480 (Minn. Ct. App. Apr. 8, 2008). First, the case is a nonprecedential Minnesota Court of Appeals decision. Second, in *Vizenor*, the court found privity for deputies who executed a search warrant, during which they were acting under the authority and at the direction of the state. *Id.* at *3 ("[The officers'] interests were affected by the forfeiture action because it was their job to seize the property and carry out the forfeiture."). Rudenick's alleged actions were not similarly sanctioned— Rudenick's alleged wrongdoing was not at the direction of the state, unlike the officers in *Vizenor*. Third, the *Vizenor* officers used the doctrine defensively, while Hill attempts to use it offensively. *See Barth v. Stenwick*, 761 N.W.2d 502, 508 (Minn. Ct. App. 2009) (outlining several reasons to treat offensive issue preclusion differently from defensive issue preclusion). A cornerstone to Minnesota's issue preclusion jurisprudence is fairness, and it would be unfair to preclude Rudenick from adjudicating these matters given the different contexts of the post-conviction appeal and this personal liability lawsuit and the different roles Rudenick played in the first action and this action.

opportunity to be heard. As to all claims against Rudenick, collateral estoppel does not apply.

**B.**     *Count I: Fourteenth Amendment Violation of Due Process*

Hill claims that Rudenick violated Hill's Fourteenth Amendment right to due process by fabricating evidence. "If officers use false evidence . . . to secure a conviction, the defendant's due process is violated." *Wilson v. Lawrence Cty.*, 260 F.3d 946, 954 (8th Cir. 2001); *see also Napue v. People of State of Ill.*, 360 U.S. 264, 269 (1959) ("[I]t is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment."). But a fact issue remains regarding whether Rudenick fabricated evidence, and neither party carried their burden at summary judgment to warrant granting their motion.

Viewing the evidence in the light most favorable to Rudenick, a jury could reasonably conclude that Rudenick did not plant DNA. In the record before the Court, the person who processed the DNA did not notice signs of tampering, and opined that the DNA was most likely from skin, not saliva from buccal swabs. (Larson Dep. at 50:22–51:17, 37:15–39:11; ECF No. 66-19 at 9; ECF No. 66-20 at 75:18–78:20 (native pagination); Doc. 66-12 at 13:9–12.) Rudenick also provided a plausible explanation for the delay in logging evidence. (Postconviction Tr. at 90:5–91:11.) The Court will deny Hill's motion for summary judgment on this count.

And viewing the evidence in the light most favorable to Hill, a jury could also reasonably conclude that Rudenick planted DNA.[9] Hill brings evidence that he did not have knowledge of or handle the firearms in question. He testified that he never touched the guns. (ECF No. 66-4 at 21:1–3.) And other people testified that the guns were theirs. (ECF No. 66-7 at 6:13–11:13; ECF No. 66-8 at 5:4–13.) Further, Rudenick's misconduct as an officer, the fact that he had the guns and DNA for several days, and the inconsistencies in Rudenick's testimony provide sufficient evidence that a jury could reasonably conclude Rudenick planted the DNA. (ECF No. 70-12 at 6–7; Fossum Ex. at 2; ECF No. 70-4 at 18:1–19:19; Investigation File at 26; Postconviction Tr. at 87:4–7, 87:13–88:9, 90:15–21, 99:23–101:6, 113:11–14, 139:9–141:25.) Confirming this conclusion is that a Ramsey County district court already found by a preponderance of the evidence that Rudenick planted DNA.[10] (Postconviction Order at 6–7.)

---

[9] Hill asks the Court to rely on private investigator Warren Robinson's testimony as an expert in this case. Rudenick asks the Court to exclude the evidence because Hill did not disclose Robinson as an expert to opposing counsel. (ECF No. 79 at 17.) "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c). The offending party has the burden to demonstrate that the failure to disclose was substantially justified or harmless. *Fu v. Owens*, 622 F.3d 880, 883–84 (8th Cir. 2010). Hill does not respond to this evidentiary issue in his motion papers, so he has not carried his burden to show that the failure was substantially justified or harmless. The Court will not consider the testimony for the purpose of this motion.

[10] Rudenick does not argue that rights subject to this lawsuit are not clearly established, warranting qualified immunity. Instead, his argument rests on whether Rudenick

**C.      Count II: Fourth Amendment Deprivation of Liberty Without Probable Cause**

Hill claims that Rudenick's fabrication of evidence violates Hill's Fourth Amendment rights. Fabrication of evidence may constitute a cause of action under the Fourth Amendment in some circumstances. *Stewart v. Wagner*, 836 F.3d 978, 983–84 (8th Cir. 2016). Rudenick does not dispute that fabricating evidence might be a cause of action under the Fourth Amendment; Rudenick disputes only whether Hill has provided sufficient evidence that Rudenick planted DNA to avoid summary judgment. As explained above, neither Hill nor Rudenick have carried their burden on this issue.

**D.      Count IV: Brady Violation**

Hill's final claim against Rudenick is that Rudenick violated *Brady v. Maryland*, 373 U.S. 83 (1963), by withholding evidence favorable to Hill. Due process requires "the government to disclose to the accused favorable evidence that is material to guilt or punishment." *United States v. Dones-Vargas*, 936 F.3d 720, 722 (8th Cir. 2019) (citing *Brady*, 373 U.S. at 87). To recover damages under 42 U.S.C. Section 1983 against a law enforcement officer for a *Brady* violation, a plaintiff must show that in failing to disclose the evidence, the officer in bad faith "intended to deprive the defendant of a fair trial." *Villasana v. Wilhoit*, 368 F.3d 976, 980 (8th Cir. 2004). Hill argues Deputy Larson's report and altered property logs were withheld, and those documents would have highlighted

---

committed the alleged violations. The Court will not consider whether the rights were clearly established.

a chain-of-custody issue. Rudenick does not dispute whether the undisclosed evidence was favorable or material; Rudenick argues that his duty was fulfilled when he handed over his case file, and that there is no evidence of bad faith.

Viewing the evidence in the light most favorable to Rudenick, Rudenick presents evidence that he turned over his case file to prosecution, which normally discharges him of any duty under *Brady*. *Helmig v. Fowler*, 828 F.3d 755, 762 (8th Cir. 2016). And Rudenick asserts that he did not know about and had no control over the supplemental reports by other officers. (Postconviction Tr. at 123:16–20; Larson Dep. at 55:11–56:2.) This is enough to deny Hill's motion for summary judgment.

Viewing the evidence in the light most favorable to Hill, Hill presents evidence that reports regarding the search of the properties were written almost two years after the searches, when they should have been completed within days of the search. (Fossum Ex. at 2.) These reports were not disclosed to Hill before trial. Fossum, Hill's expert, opined that "[a] reasonable conclusion is that, when defense counsel raised the issue, Defendant Rudenick enlisted his colleagues to create reports to provide the missing chain of custody for the evidence seized."[11] (*Id.* at 2.) Additionally, testimony shows that the

---

[11] Rudenick asks the Court to exclude Fossum's expert opinion because it lacks a factual basis. "[T]he factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination. Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929–30 (8th Cir. 2001) (citation omitted). Accordingly, the Court will consider the opinion.

lead investigator in the case is responsible for putting together and turning over evidence to prosecution. (Larson Dep. at 55:11–16.) This evidence gives rise to the inference that Rudenick knew about the documents, was responsible for turning them over as the lead investigator, and failed to do so.[12] Regarding bad faith, asking the officers to create the reports, along with the evidence that Rudenick planted evidence, would entitle a fact-finder to find bad faith. This evidence is enough to deny Rudenick's motion for summary judgment.

Accordingly, finding facts issues, the Court will deny Hill and Rudenick's motions Counts I, II, and IV.

### III. Ramsey County and Hill's Motions for Summary Judgment on *Monell* Liability[13]

Hill brings one claim against Ramsey County—*Monell* liability. Under *Monell*, a county cannot be liable under Section 1983 just because it employs a tortfeasor. *Atkinson*

---

[12] The testimony also indicates that officers would not turn over the reports in question unless the county attorney asked for them. (Larson Dep. at 55:21–56:2.) However, officers have an *obligation* to hand over *Brady* material. *Moldowan v. City of Warren*, 578 F.3d 351, 380 (6th Cir. 2009) ("[T]he police's obligation to turn over material and exculpatory evidence also follows inexorably from the Supreme Court's recognition that the police have a constitutional duty to preserve such evidence."). So whether prosecution asked for the document does not impact the Court's decision.

[13] Hill brings the *Monell* claim against Ramsey County Sheriff's Office. However, Ramsey County Sheriff's Office is not a legal entity that can be sued. *Flores v. United States*, 689 F.3d 894, 899 n.4 (8th Cir. 2012) (acknowledging that county departments "are not legal entities capable of being sued"). The Court will dismiss the Ramsey County Sheriff's Office and construe the claim as against Ramsey County.

*v. City of Mountain View*, 709 F.3d 1201, 1214 (8th Cir. 2013). A county can be liable only for a constitutional violation resulting from "(1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Leftwich ex rel. Leftwich v. Cty. of Dakota*, 9 F.4th 966, 972 (8th Cir. 2021) (citation omitted). Hill relies on all three prongs, and the Court examines each theory in turn.[14]

### A.    Official Policy

"To prove the existence of a policy, a plaintiff must point to an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Schaffer v. Beringer*, 842 F.3d 585, 596 (8th Cir. 2016) (quotation marks and citation omitted); *see also Monell*, 436 U.S. at 690. For a policy to give rise to *Monell* liability, it must affirmatively sanction or require unconstitutional conduct. *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 392 (8th Cir. 2007); *see also Schaffer*, 842 F.3d at 597.

Hill asserts that the evidence-handling policy is an official policy that gives rise to *Monell* liability. But nothing in the policy sanctions or requires unconstitutional conduct; the policy merely provides guidelines to ensure proper chain of custody. (ECF No. 70-13

---

[14] The parties dispute whether issue preclusion applies to Ramsey County; the Court need not address it. Even if the Court assumed that Rudenick planted DNA and that a *Brady* violation occurred, and viewing the evidence in the light most favorable to Hill, Ramsey County is entitled to judgment as a matter of law. Accordingly, for the purpose of the *Monell* claim, the Court will assume that Rudenick planted DNA and that a *Brady* violation occurred.

¶¶ 162.01–162.05.) Because the official policy is lawful on its face and does not compel unconstitutional action, the proper inquiry is one of unofficial custom or failure to train or supervise. *Szabla*, 486 F.3d at 390.

B.    **Unofficial Custom**

"[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). A *Monell* claim based on custom requires:

(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
(2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
(3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014) (modified into list format). Evaluating the evidence in the light most favorable to Hill, he fails to show the existence of such a pattern.

Hill appears to assert two customs that give rise to *Monell* liability. First, Hill argues that the Sheriff's Office has a custom of fabricating evidence and reports. (ECF No. 73 at 27.) To support his assertion, Hill points the Court to the Postconviction Order, which found that police records in Hill's case were altered after they were provided through discovery, several material documents were not disclosed, and the chain of

custody was broken.[15] (*See* Postconviction Order at 5–6.) This is not enough: it is not pervasive or widespread such that it has "the effect and force of law." *Brewington v. Keener*, 902 F.3d 796, 801 (8th Cir. 2018) (citation omitted).

Hill also argues that there was a "known custom or practice, endorsed by [Ramsey County Sheriff's Office], regarding evidence handling in effect at the time also caused the constitutional violations." (ECF No. 69 at 33.) He explains that, among other things, officers stored evidence "wherever they pleased" and opened and resealed evidence haphazardly. (*Id.* at 38.) This attempt to establish a pattern fails for at least two reasons.

First, Hill fails to show a pattern of *unconstitutional* acts. Sloppy evidence-handling practices are not necessarily unconstitutional. *See, e.g., Snider*, 752 F.3d at 1160.

Second, Hill fails to show a pattern of *similar* violations. The underlying constitutional violations here are Rudenick planting evidence and a *Brady* violation. The evidence-handling issues Hill identifies are not similar to planting evidence or *Brady* violations. *Connick v. Thompson*, 563 U.S. 51, 62–63 (2011). Indeed, the Supreme Court has defined this even more narrowly, concluding that several *Brady* violations taken together were not similar enough to the underlying *Brady* violation to establish a pattern. *Id.* If other *Brady* violations are not necessarily similar to an underlying *Brady* violation, then poor evidence practices are certainly not similar to planting evidence or the underlying

---

[15] Hill argues that Rudenick falsified police reports in other cases. (ECF No. 73 at 15.) Hill does not cite admissible evidence to support that assertion, so the Court will not consider it.

*Brady* violation to constitute a pattern. Hill does not provide evidence of other constitutional violations, much less other *similar* constitutional violations. Accordingly, Hill does not establish an unofficial custom that gives rise to *Monell* liability, which leaves one last opportunity to establish *Monell* liability—deliberately indifferent failure to train or supervise.

### C.   *Failure to Train or Supervise*

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61; *see Robbins v. City of Des Moines*, 984 F.3d 673, 682 (8th Cir. 2021) ("It is difficult to establish a municipality's culpability based on failure to train . . . ."). Municipal liability based on a failure to train or supervise requires a showing of "deliberate indifference to the rights of persons with whom the untrained employees come into contact." *Connick*, 563 U.S. at 61 (brackets and citation omitted). "Deliberate indifference requires proof the municipality disregarded a known or obvious consequence of its action or inaction." *Robbins*, 984 F.3d at 682; *see also Connick*, 563 U.S. at 61. A claim for municipal liability based on a failure to train or supervise cannot "succeed without evidence the municipality received notice of a pattern." *Atkinson*, 709 F.3d at 1216–17 (cleaned up, citation omitted); *see also Parrish v. Ball*, 594 F.3d 993, 1002 (8th Cir. 2010).

Deliberate indifference requires a pattern, and as discussed above, Hill has not provided sufficient evidence of a pattern. *See Atkinson*, 709 F.3d at 1216 (where plaintiff's

only evidence of excessive force by police officers was single incident at issue in lawsuit, evidence could not support deliberate indifference claim against municipal employer).

Nor does Hill provide evidence that the County had notice of a pattern, and "[n]otice is the touchstone of deliberate indifference." *Id.* Hill asserts that the Washington County investigation into Rudenick's theft put Ramsey County on notice. But according to that investigation, Ramsey County first discovered irregularities in handling evidence almost five years *after* DNA was submitted in Hill's criminal case. (Investigation File at 5 (Ramsey County first discovered irregularities in February 2015); ECF No. 66-19 at 2–8 (Rudenick submitted DNA evidence at issue in this case in July 2010).) And the investigation involved hoarding stolen items at home, not planting evidence, so such an investigation would not have put Ramsey County on notice of a pattern of fabricating evidence or *Brady* violations. Thus, Hill has not met its burden of proving a pattern and notice that would give rise to deliberate indifference.

Without evidence of an official policy, custom, or failure to train or supervise, there is no genuine dispute as to any material fact, and Ramsey County is entitled to judgment as a matter of law. Accordingly, the Court will grant Ramsey County's motion for summary judgment in full and deny Hill's motion for summary judgment on *Monell* liability.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS

HEREBY ORDERED THAT:

1.    Ramsey County's motion for summary judgment (ECF No. 57) is

GRANTED. The claims against Ramsey County, Ramsey County Sheriff's

Office, and Rudenick in his official capacity are DISMISSED WITH

PREJUDICE;

2.    Rudenick's motion for summary judgment (ECF No. 63) is DENIED; and

3.    Hill's motion for summary judgment (ECF No. 68) is DENIED.


Dated: March 13, 2024                    BY THE COURT:

                                         s/Nancy E. Brasel
                                         Nancy E. Brasel
                                         United States District Judge